UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM BREWSTER BROWNVILLE, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| INDIAN MOUNTAIN SCHOOL, INC., | : | |
| | : | |
| Defendant. | : | October 6, 2014 |

**COMPLAINT AND JURY DEMAND**

**Introduction**

When the plaintiff was 12 years old he was entrusted to the care, custody and supervision of Indian Mountain School, a private boarding school in Lakeville, Connecticut. School officials promised, and Brewster and his parents trusted, that the school would do everything in its power to keep him safe from harm. Indian Mountain School betrayed that trust. Instead of entering a safe and secure community fostering the learning and growth of school children, Brewster found himself for the next four years in an environment of well-known, extreme, and accepted predatory sexual assaults and pedophilia inflicted by adults on young vulnerable boys, including forced fellatio, sodomy, voyeurism, masturbation, and gang rapes. These horrifying acts and others were inflicted on school property, during the school year, by and under the noses of the school's teachers and administrators, including its headmaster, the

headmaster's wife, multiple members of its faculty and staff, and the school's Board of Trustees.  Brewster brings this Complaint to seek recompense for the sexual abuse and assaults and life-long suffering Indian Mountain School inflicted on him and to shine a light on these events so that the wrongdoers may be held accountable, other victims may be helped, future abuse may be prevented, and justice may be done.

## I. Jurisdiction and Venue

1. Jurisdiction obtains pursuant to 28 U.S.C. § 1332(a).

2. The plaintiff resides in and is a citizen of the State of Massachusetts.

3. The defendant is a non-stock corporation formed pursuant to the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

4. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(a) in that the defendant resides in this District and the events, acts and omissions giving rise to the plaintiff's claims occurred in this District.

6. The defendant's acts and omissions alleged herein occurred while the plaintiff was a minor, the action is brought within 30 years from the date the plaintiff attained the age of majority, and this action seeks damages caused by sexual abuse,

sexual exploitation and sexual assault; accordingly, this Complaint is timely filed pursuant to Connecticut General Statutes § 52-577d.

## II.   Parties

7.   William Brewster Brownville (Brewster) attended Indian Mountain School from 1983 to 1987, when he was 12-15 years old.

8.   Indian Mountain School, founded in 1922, is an exclusive private boarding and day school for boys and girls in pre-kindergarten through ninth grade, in Lakeville, Connecticut.

## III.   First Claim for Relief (Negligence):

9.   At the time of the sexual abuse and assaults described in this Complaint, Indian Mountain School charged thousands of dollars per year for the privilege of attending the school and residing on school grounds.

10.   In exchange for the substantial monetary compensation charged to Brewster's parents, and to the parents of the other minor children in the school's care and custody, Indian Mountain School assumed responsibility for, among other things, the students' protection, safety and wellbeing.

11.   The school promised Brewster and his parents that the health and welfare of the students was the school's highest priority.

12. The school accepted the duty and responsibility to keep the children in its care and custody safe from harm.

13. The school owed, and agreed that it owed, Brewster and the other minor children in its care and custody a duty to do everything within its power to protect them from sexual abuse by school administrators, faculty and staff.

14. Notwithstanding these duties, responsibilities and promises, at the time Brewster entered and attended Indian Mountain School, the school's headmaster, the headmaster's wife, several of its teachers, and several members of its staff were pedophiles who preyed and had for years been preying on vulnerable children in the school's care.

15. Notwithstanding the school's duties, responsibilities and promises, at the time Brewster entered and attended Indian Mountain School, the school, acting through its Board of Trustees, its officials and administrators, and its faculty, knew and should have known that the headmaster and members of the faculty and staff were pedophiles who preyed and had for years been preying on vulnerable children in the school's care.

16. Peter Carleton was the headmaster of Indian Mountain School prior to and during the time that Brewster attended the school.

17. In or around April 1986, when Brewster was 14 years old, Carleton showed Brewster and other minor boys pornography on the television in his living

room, including the violent pornographic film *Caligula* and a movie about a headmaster of a boys school who had sex with children.

18.     While showing the movies Carleton gave Brewster and the other boys whiskey.

19.     While showing the movies Carleton talked about being sexually aroused, asked Brewster and the other boys if they were "getting hard", and encouraged the boys to masturbate.

20.     In the fall of 1986, when Brewster was 15 years old, he and three other boys were ordered to live in the basement of Carleton's house on campus.

21.     Every semester, Carleton rotated four new pubescent boys into his basement; this practice had been going on for years and was known throughout the school community.

22.     At least once a week during the three months that Brewster was installed in Carleton's basement, Carleton sexually abused him.

23.     Always at night, Carleton called from the top of the stairs and ordered Brewster to Carleton's bedroom.

24.     Each time, Carleton lay naked on the floor or on his bed, and he directed Brewster to undress and to lie on top of him and massage his body.

25.     Carleton moaned sexually provocative phrases, thrust his buttocks and anus into Brewster's penis encouraging Brewster to anally penetrate him, and directed Brewster to masturbate him to ejaculation.

26. Carleton molested Brewster this way approximately 15 times during the semester that Carleton had Brewster installed in his basement, and once after Brewster was allowed to move out.

27. Also during the time that Carleton kept Brewster in his basement, the headmaster frequently entered the private, single-person basement bathroom while Brewster was showering, and he inspected Brewster's buttocks and penis for hair, touched his scrotum and testicles and penis, and commented on his size and shape.

28. Carleton was obsessed with Brewster's body and the changes in his body as he matured; he touched and inspected Brewster in the shower 20 to 25 times.

29. Before and after Carleton installed Brewster in his basement, he frequently came into Brewster's dormitory and dorm room at night, smelling of liquor, showing Brewster and other boys pornographic magazines, and asking the boys sexual and provocative questions such as "Do you like this?", "It's hot, isn't it?", "Do you like watching eating pussy?", "Are you getting a boner?", "Are you getting pussy?", and "Are you jerking off yet?".

30. Carleton allowed and encouraged Brewster and other boys to drink alcohol and to smoke cigarettes, pot and opium; he often gave alcohol to the boys.

31. Carleton also frequently entered the boys' communal showers in the school gym, and visually inspected and commented on the boys' naked bodies, saying things like "You're getting pretty big."

32. Prior to the time that Carleton sexually abused, assaulted and molested Brewster, many members of the Indian Mountain School community – including chairman of the Board of Trustees Paul Levin, assistant headmaster Steven Carver, teacher Gerard Jones, and other teachers at the school – knew about and witnessed Carleton's predatory and perverse fascination with boys' bodies.

33. Carleton spoke frankly with Carver, Jones and other teachers about watching students take showers.

34. At faculty meetings, Carleton spoke about the size of boys' penises.

35. At parties with the trustees, Carleton gave progress reports on the development of boys' bodies.

36. Chairman of the Board of Trustees Levin was later quoted as saying: "Boys would come in when they were nine, and they would go through puberty. He [Carleton] was very interested in that change. He'd say this boy's got pubic hair and that boy's hairless. He was very interested in what the boys and girls might be doing with each other sexually. It was very bizarre for a headmaster to talk that way. It was a very weird thing to talk about at a party. Carleton was very definitely kinky. We used to kind of wince and think he was trying to be funny. There's a certain kind of person who gets away with murder through charm."

37. After witnessing Carleton ask a boy about his relationship with a girl, teacher Gerard Jones later said, "He [Carleton] made a comment that the boy's penis frightened the girl off."

38. Notwithstanding their actual knowledge that the school's headmaster was sexually and perversely fascinated by boys as young as nine years old, Levin, Carver, Jones and the other teachers and trustees did absolutely nothing to protect the children from Carleton's predatory yearnings.

39. On at least three occasions during the time that Carleton had Brewster and the other young boys installed in his basement, Carleton's wife Catherine ("Kitty") directed Brewster and one of the other boys to join her in bed.

40. While in bed with the boys, Kitty drank martinis and was obviously drunk, she cried and moaned in despair, saying things like "Everything is so fucked up", she offered valium and alcohol to the boys, and she held and touched and forcibly groped them in sexually provocative and inappropriate ways.

41. Indian Mountain School English teacher Christopher Simonds also sexually abused, assaulted, molested, and threatened Brewster when he was a young vulnerable boy at the school.

42. Simonds had been a teacher at the school since approximately 1973; and during his approximately 12 years at the school prior to the time that he molested and threatened Brewster, he manipulated, groomed, and sexually abused, assaulted, molested and raped dozens of other school boys.

43. As part of his manipulation and grooming of young boys during his years at the school prior to sexually assaulting, abusing and threatening Brewster, Simonds

routinely showed pornographic films to the boys, and he gave them cigarettes, alcohol, marijuana, cocaine, and LSD.

44. Simmonds also took photographs of the boys while they were naked and involved in sex acts; and he used the photographs to blackmail the boys into gratifying his predatory and perverse sexual desires and into remaining silent about his continuing abuse.

45. Headmaster Peter Carleton, multiple other faculty members and staff, and members of the Indian Mountain School Board of Trustees were on actual notice of Simonds' abusive and manipulative conduct and his frequent rape of the defenseless boys entrusted to the school's care.

46. Carleton learned of Simonds' serial molestations from, among other sources, Steven Carver, a teacher and former assistant headmaster of Indian Mountain School, and Michele Nemiroff, a teacher at the school.

47. Carleton learned in or about 1978 that Simonds had brought a group of boys camping and had provided them with pornography.

48. Carleton and Carver knew that Simonds frequented the boy's dormitory after lights out.

49. In 1984, Carleton learned that Simonds was actively preying on and sexually abusing boys at the school; but, other than discussing the charges with Simonds in the headmaster's office, Carleton took no action of any kind to protect or warn the boys.

9

50. The Indian Mountain School Board of Trustees met several times during the spring of 1985 to discuss Simonds' sexual abuse and assaults. In attendance at the meetings were Peter Carleton, chairman of the board Paul Levin, vice chairman John "Rusty" Chandler, Jr., John Virdon, Kathy Metz, Jerry Clooney, and former board member and the school's then legal counsel William Cuddy.

51. Despite knowing of Simonds' history of perverted, manipulative and sexually abusive treatment of young boys, and despite knowing that the school housed and employed a sexual predator and pedophile, the board, the headmaster, and the school's lawyer allowed this sick and dangerous man to continue to have unfettered access to young vulnerable boys to satisfy his prurient sexual desires.

52. Despite knowing that a teacher at the school with daily access to hundreds of young boys was an active and prolific pedophile, and despite knowing that Simonds had sexually abused and was continuing to routinely sexually abuse vulnerable and defenseless boys in the school's custody, no meaningful steps were taken by anyone in a position of authority and responsibility at the school to warn the children and their parents, to protect the children, to fire or report or even discipline Simonds, or to do anything else in response to the certain knowledge that Simonds would strike again.

53. As a result of the school's complete failure to protect the boys from Simonds' predatory impulses and schemes, Simonds molested, threatened and abused Brewster.

10

54.     In or around January 1985 in a bedroom in the Doolittle boys' dormitory, Simonds molested then-13 year old Brewster by forcibly fondling Brewster's penis and testicles and by forcing Brewster to touch his penis and testicles.

55.     At the time of the sexual assault, Simonds threatened Brewster: "I've decided to take a liking to you.  You'll find it infinitely more painful."

56.     On another occasion in or around 1986, in the kitchen of his house on the Indian Mountain School campus, Simonds forcibly attempted to perform fellatio on Brewster.

57.     Indian Mountain School math teacher Daniel Cook also molested and abused Brewster while he was in the custody of the school.

58.     In or around February 1985 in a dorm room in the Doolittle dormitory, Cook put his penis in then 13-year old Brewster's face, and he forced Brewster and another student to touch his penis and scrotum and testicles.

59.     During the same period, in a math classroom in the school's main building, Cook exposed himself and ordered Brewster to touch his penis while another student watched.

60.     On several occasions, Cook ordered Brewster to shower in his apartment, and he fondled Brewster's penis and scrotum and testicles during the showers.

61.     During a math class attended by Brewster and other boys, Cook exposed himself and masturbated.

62. Brewster was also sexually molested on multiple occasions by adult male employees in Indian Mountain School's maintenance department.

63. On approximately five occasions during Brewster's four years at the school, Jamas Stanton and Jim Hickey held Brewster down in a maintenance closet while a third member of the crew, Bob "Bullet" Sherwood, ordered Brewster to "suck my dick".

64. During each of these gang rapes, "Bullet" pulled out his penis and forced himself into Brewster's mouth.

65. The school's affirmative acts created, and exposed Brewster to, a known high degree of risk of harm.

66. The school was on actual and constructive notice of the risk and of the gravity of the harm that would result if Brewster were sexually molested, abused, threatened or assaulted by one or more of the pedophiles in the school's employ.

67. The school was on actual and constructive notice of the sexually aberrant behavior and propensities of Peter Carleton, Kitty Carleton, Christopher Simonds, Daniel Cook, Jamas Stanton, Jim Hickey, and Bob "Bullet" Sherwood.

68. The school knew that no other person or entity would assume, or would be allowed to assume, the responsibility for preventing the pedophiles from molesting Brewster.

69. In fact, Indian Mountain School officials, trustees, administrators and teachers actually conspired to prevent others from learning about or preventing or

remedying the ongoing, rampant, serial molestations being perpetrated by school employees on the boys in the school's care and custody.

70. The school created a situation that it knew and should have known was likely to be dangerous to Brewster and to the other young children in its care.

71. Despite having created the dangerous situation, the school failed and refused to take appropriate precautions against the risk of harm.

72. Not only did the school fail and refuse to protect Brewster and the other school children from the sexual predators in their midst, it expected the boys to protect themselves, it blamed them when they failed to do so, and it accused the boys of inviting and actually instigating the sexual abuse.

73. In response to lawsuits alleging sexual abuse and assaults similar to those described here, Indian Mountain School blamed the child victim, arguing that: "Any injuries, losses and damages claimed by the plaintiffs were caused by [the boys'] own wanton, willful and reckless conduct".

74. As a result of Indian Mountain School's acts and omissions, Brewster's ability to engage in normal life activities has been permanently impaired and he has been and will be unable to lead and enjoy a normal life.

75. The harm inflicted on Brewster at Indian Mountain School has prevented him from entering into lasting meaningful relationships.

76. Brewster's ability to maintain intimate physical, sexual and emotional relationships has been irreparably damaged.

77. Brewster has sustained physical pain and suffering.

78. Brewster has sustained, and will continue over the course of his lifetime to suffer, mental, psychiatric, and emotional injuries, some or all of which are permanent, including severe emotional distress, humiliation, embarrassment, mental pain and anguish, anxiety, panic, sexual dysfunction, PTSD, depression, hyper-vigilance, shame and low self-esteem.

79. Brewster has also suffered permanent damage to his educational prospects and to his past, present and future earnings.

80. Brewster has also suffered out-of-pocket economic damages in connection with over twenty years of mental health therapy.

81. Brewster's injuries and damages were caused by the negligence of Indian Mountain School, its teachers, administrators, employees and agents, for whose negligence the school is liable, in the ways previously described and in the following ways:

   a. The school employed known pedophiles, and allowed those pedophiles free reign to gratify their perverse sexual desires by molesting young vulnerable boys in the school's care and custody;

   b. The school failed and refused to supervise, discipline, report or fire school administrators, school teachers and other school

        employees whom it knew and should have known were serial child molesters; and

    c.    The school failed to warn Brewster and his parents of the risk of harm and of the actual harm to which he was subjected while attending Indian Mountain School.

82.    Indian Mountain School owed Brewster a duty of care, it breached that duty, its breach caused Brewster to be repeatedly sexually assaulted, abused and molested, and Brewster suffered damages as a result.

**IV.    Second Claim for Relief (Recklessness):**

1.    Paragraphs 1 through 82 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Second Claim for Relief, as if fully set forth herein.

2.    Indian Mountain School, acting through its administrators, teachers and staff, was consciously aware of the fact that it created a substantial risk to Brewster.

3.    Notwithstanding the school's conscious awareness of the risk to Brewster, the school failed to take necessary and appropriate steps to reduce or eliminate the risk.

4.    Notwithstanding the school's conscious awareness of the risk to Brewster, the school took affirmative steps to exacerbate the risk and to make harm and injury to Brewster more likely.

5.    The injuries suffered by Brewster were caused by the reckless or callous

indifference, or the wanton misconduct, of the defendant.

### V.      Third Claim for Relief (Negligent Infliction of Emotional Distress):

    1.   Paragraphs 1 through 82 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Third Claim for Relief, as if fully set forth herein.

    2.   Indian Mountain School created an unreasonable risk of causing Brewster emotional distress.

    3.   Brewster suffered distress, and his distress was foreseeable.

    4.   The emotional distress was severe enough that it might result in illness or bodily harm.

    5.   The school's conduct was the cause of Brewster's distress.

### VI.     Fourth Claim for Relief (Intentional Infliction of Emotional Distress):

    1.   Paragraphs 1 through 82 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Fourth Claim for Relief, as if fully set forth herein.

    2.   Indian Mountain School intended to inflict emotional distress or it knew or should have known that emotional distress was the likely result of its conduct.

    3.   The school's conduct was extreme and outrageous.

    4.   The school's conduct was the cause of Brewster's distress.

    5.   The emotional distress sustained by Brewster was severe.

**VII.   Fifth Claim for Relief (Breach of Fiduciary Duty):**

    1.    Paragraphs 1 through 82 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Fifth Claim for Relief, as if fully set forth herein.

    2.    A fiduciary relationship existed between Indian Mountain School and Brewster which gave rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any manner relating to the plaintiff.

    3.    The school advanced its own interests to the detriment of the plaintiff.

    4.    Brewster sustained damages.

    5.    Brewster's damages were proximately caused by the school's breach of its fiduciary duty.

**VIII.   <u>PRAYER FOR RELIEF</u>**

    Wherefore, the plaintiff prays for the following relief:

    1.    Compensatory damages;

    2.    Punitive damages; and

    3.    Such other relief as the Court deems just and proper.

PLAINTIFF WILLIAM BREWSTER BROWNVILLE


BY s/Antonio Ponvert III
ANTONIO PONVERT III ct17516
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 FAIRFIELD AVENUE
BRIDGEPORT, CT 06604
Tel: 203-336-4421
(203)368-3244 (facsimile)
aponvert@koskoff.com

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM BREWSTER BROWNVILLE, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| INDIAN MOUNTAIN SCHOOL, INC., | : | |
| | : | |
| Defendant. | : | October 6, 2014 |

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. Rule 38, the plaintiff in the above-captioned matter hereby demands a trial by jury on all issues.

                                              THE PLAINTIFFS

                                              By /s/ Antonio Ponvert III
                                                   Antonio Ponvert III
                                                   Federal Bar No. ct 17516
                                                   Koskoff Koskoff & Bieder
                                                   350 Fairfield Avenue
                                                   Bridgeport, Connecticut 06604
                                                   TEL:  203-336-4421
                                                   FAX: 203-368-3244
                                                   Email: aponvert@koskoff.com